```
                DISTRICT COURT OF THE VIRGIN ISLANDS
                 DIVISION OF ST. THOMAS AND ST. JOHN

IN RE:                              )
                                    )
JEFFREY J. PROSSER,                 )     Chapter 7
                                    )     Case No. 06-30009 (JFK)
          Debtor.                   )
                                    )
                                    )
JAMES P. CARROLL, CHAPTER 7         )
TRUSTEEE,                           )
                                    )
          Plaintiff/Appellee,       )
                                    )
               v.                   )     D.C. App. Civ. No. 2011-22
                                    )
JOHN D. KLINGERMAN                  )
                                    )
          Defendant/Appellant.      )
                                    )
```

ATTORNEYS:

**K. Glenda Cameron, Esq.**
Law Offices of K. G. Cameron
St. Croix, VI
    *For the appellant,*

**Samuel H. Israel, Esq.**
Fox Rothschild LLP
Philadelphia, PA
    *For the appellee.*

<u>**MEMORANDUM OPINION**</u>

**GÓMEZ, J.**

    Before the Court is the appeal of John D. Klingerman ("Klingerman") from the February 9, 2011, Judgment of the Bankruptcy Division of this Court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On September 4, 1996, Jeffrey J. Prosser ("Jeffrey Prosser") and Dawn Prosser acquired certain real property located in Lake Placid, New York (the "Lake Placid Property").

On July 31, 2006, Jeffrey Prosser declared bankruptcy. Thereafter, the appellee, James P. Carroll ("Carroll") was appointed trustee of the bankruptcy estate.

On June 17, 2008, the bankruptcy judge authorized Carroll to sell the Lake Placid Property. The Property was to be sold at auction in accordance with certain bidding procedures approved by the bankruptcy judge (the "Bidding Procedures"). The Bidding Procedures provided that, among other things, a potential bidder submit a $200,000 deposit in order to participate in the auction. (R. 4, Ex. 2, at 2.) This deposit would be returned should the bidder fail to prevail. (R. 4, Ex. 2, at 2.)

The Bidding Procedures further provided that the winning bidder was required to be "prepared to enter into a legally binding purchase and sale agreement within two (2) weeks of the entry of [an order approving the sale]." (R. 4, Ex. 2, at 2.) Should the successful bidder fail to enter into such an agreement, the "Trustee will not have any obligation to return the Good Faith Deposit" which would instead "become property of the Debtor's estate." (R. 4, Ex. 2, at 5.)

At the auction, Klingerman submitted the winning bid, in the amount of $3.55 million. On July 23, 2008, the bankruptcy judge approved the sale of the property to Klingerman.

Klingerman made no attempt to enter into any binding purchase and sale agreement. Accordingly, on September 17, 2008, Carroll petitioned the Bankruptcy Division to retain Klingerman's $200,000 deposit. The bankruptcy judge authorized Carroll to retain the deposit, noting that its Order "shall not prohibit or limit the Trustee's . . . rights to seek additional damages against . . . Klingerman in connection with his failure to close on the sale of the Lake Placid Property." (R. 8, at 4-5.)

Caroll then sold the Lake Placid Property to the next highest bidder, for the sum of $2.7 million.

Thereafter, on January 16, 2009, Carroll initiated the underlying adversary proceeding against Klingerman. Carroll sought to recoup the difference between the sale price and Klingerman's bid.

On February 9, 2011, the bankruptcy judge entered judgment in favor of Carroll and against Klingerman, finding that Klingerman had breached a valid contract. The bankruptcy judge awarded Carroll damages in the amount of $640,689.40. Klingerman filed a timely appeal. Klingerman argues that the bankruptcy judge erred by failing to construe the relevant portions of the

Bidding Procedures requiring forfeiture of his deposit as a liquidated damages provision. Thus, he asserts that as a matter of law, he cannot be held liable for any additional contract damages.

## II. STANDARD OF REVIEW

This Court has jurisdiction to review the "final judgments, orders, and decrees" of bankruptcy courts pursuant to section 158(a) of Title Twenty-Eight of the United States Code.[1]

The Court will review the bankruptcy court's findings of fact for clear error and will exercise plenary review over questions of law. *In re Barbel*, Civ. No. 01-221 (RLF) 2004 U.S. Dist. LEXIS 19417, at *2 (D.V.I. Sept. 21, 2004) ("A district court reviews the Bankruptcy Division's conclusions of law *de novo* but may only review findings of fact that are clearly erroneous." (citing Fed. R. Bankr. P. 8013; *In re Excalibur Auto. Corp.*, 859 F.2d 454, 457 (7th Cir. 1988)), *aff'd* 183 Fed. App'x 227 (3d Cir. 2006). "[A] bankruptcy court's exercise of its equitable power is reviewed only for an abuse of

---

[1] Title 28, Section 158 of the United States Codes provides, in pertinent part: "[t]he district courts of the United States shall have jurisdiction to hear appeals . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under [28 U.S.C. § 157]. An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving." 28 U.S.C. § 158(a).

discretion." *In re Mou San Rim*, Civ. No. 10-1066 (DMC), 2010 U.S. Dist. LEXIS 117458, at *3-4 (D.N.J. Nov. 3, 2010).

### III. ANALYSIS

Klingerman challenges the bankruptcy judge's interpretation of the good-faith deposit provision of the Bidding Procedures.

A contract is formed where both parties manifest an intention to be bound by an agreement's terms and those terms are sufficiently definite to be enforced. *See Morton v. Hewitt*, 202 F. Supp. 2d 394, 395 (D.V.I. 2002)(citing to *ATACS Corp. v. Trans World Commc'ns, Inc.*, 155 F.3d 659, 665 (3d Cir. 1998)). In this case, the Bidding Procedures identified an offeror, the subject property, the time and terms of payment, and established dates of performance. (Bidding Procedures, Adv. Pro. No. 08-03009.) Klingerman was informed that all bids were binding. (Good Faith Deposit Order, Adv. Pro. No. 08-03009.) Klingerman then submitted a written bid. As such, all essential elements of a contract were present: a written offer (the Bidding Procedures), written acceptance, and terms definite enough to be enforced. *See Morton*, 202 F. Supp. 2d at 395. The Bankruptcy Court came to the same conclusion, and Klingerman does not challenge that determination.

"The interpretation of private contracts is ordinarily a question of state law[.]" *Volt Info. Scis., Inc. v. Bd. of Trs. of the Leland Stanford Junior Univ.*, 489 U.S. 468, 474 (1989).

In this instance, the estate selling the property (as part of bankruptcy liquidation) is a resident of St. Thomas, U.S.V.I. Bankruptcy proceedings were initiated and overseen by the Bankruptcy Court of the U.S. Virgin Islands. The property that is the object of the contract sits in the state of New York

"When two states have a connection to a case and an issue arises on which the states' respective laws differ, a choice of law must be made." *In re PHP Health Care Corp.*, 128 Fed. App'x 839, 842 (3d Cir. 2005); *Metro. Life Ins. Co. v. Dysart*, No. 2007-116, 2008 WL 5101686, at *6 (D.V.I. Dec. 1, 2008).

In those circumstances, the Third Circuit has instructed that a court should apply the choice-of-law rules of the forum state. *Id.* at 843. In the Virgin Islands, choice-of-law rules are supplied by the Second Restatement of Conflict of Laws.[2] With respect to disputes involving conveyances of real property, the Restatement provides: "In the absence of [a choice-of-law term], the instrument is construed in accordance with the rules of construction that would be applied by the courts of the situs." RESTATEMENT (SECOND) OF CONFLICT OF LAWS, § 224 (1971).

---

[2] In the Virgin Islands, "[t]he rules of the common law, as expressed in the restatements of the law . . . shall be the rules of decision in the courts of the Virgin Islands . . . in the absence of local laws to the contrary." V.I. CODE ANN., tit. 1, § 4. Although the Supreme Court of the Virgin Islands has stated that no Restatement should be mechanically applied in all cases, this Court is unaware of any local law, including case law, which would require deviation in this case. *See Banks v. Intl. Rental and Leasing Corp.*, 55 V.I. 967, 2011 WL 6299025, at *6 (V.I. 2011).

In the instant case, the property that was the object of the contract is located in New York. As such, the situs of the property points in favor of applying New York law. The Court also notes that both parties agree that the applicable law is that of the state of New York

In New York, " 'a contractually agreed upon sum for liquidated damages will be sustained where (1) actual damages may be difficult to determine and (2) the sum stipulated is not plainly disproportionate to the possible loss.' " *U.S. Fidelity & Guar. Co. v. Braspetro Oil Servs. Co.*, 369 F.3d 34, 71 (2d Cir. 2004) (quoting *United Merchants & Mfrs. v. Equitable Life Assurance Soc'y*, 674 F.2d 134, 142 (2d Cir. 1982)); *see also Truck Rent-A-Center, Inc. v. Puritan Farms 2nd, Inc.*, 393 361 N.E.2d 1015, 1018 (N.Y. Ct. App. 1977) ("[A] liquidated damages provision is an estimate, made by the parties at the time they enter into their agreement, of the extent of the injury that would be sustained as a result of the breach of the agreement."); *City of Rye v. Pub. Serv. Mut. Ins. Co.*, 315 N.E.2d 458 (1974).

"'Whether the sum stipulated represents a liquidation of the anticipated damages or a penalty is a question of law, with due consideration for the nature of the contract and the attendant circumstances.' " *U.S. Fidelity & Guar.*, 369 F.3d at 71 (quoting *J.R. Stevenson Corp. v. Cnty. of Westchester*, 493

N.Y.S.2d 819, 823 (N.Y. App. Div. 1985)). "If the clause 'is intended by the parties to operate in lieu of performance, it will be deemed a liquidated damages clause and may be enforced by the courts . . . . If such a clause is intended to operate as a means to compel performance, it will be deemed a penalty and will not be enforced.' " *Rattigan v. Commodre Int'l, Ltd.*, 739 F. Supp. 167, 169 (S.D.N.Y. 1990) (quoting *Brecher v. Laikin*, 430 F. Supp. 103, 106 (S.D.N.Y. 1977)) (applying New York law). A provision is a penalty if "the amount fixed is plainly or grossly disproportionate to the probable loss." *Truck Rent-a-Center*, 361 N.E.2d at 1018. New York courts " 'favor the construction which makes the sum payable for breach of contract a penalty rather than liquidated damages, even where the parties have styled it liquidated damages rather than a penalty.' " *Rattigan*, 739 F. Supp. at 169–70 (quoting *City of New York v. B&M Ferry Co.*, 143 N.E.788, 790 (N.Y. Ct. App. 1924)).

"Under no circumstances, however, will liquidated damages be allowed where the contractual language and attendant circumstances show that the contract provides for the full recovery of actual damages, because liquidated and actual damages are mutually exclusive remedies under New York law." *U.S. Fidelity & Guar.*, 369 F.3d at 71 (citing *XLO Concrete Corp. v. John T. Brady & Co.*, 482 N.Y.S. 2d 476, 479 (N.Y. App. Div. 1984) ("[W]hen the parties by their contract provide for the

consequences of a breach, lay down a rule to admeasure the damages[,] and agree when they are to be paid, the remedy thus provided must be exclusively followed." (internal quotation marks and citation omitted)).

Thus, for example, in *In re Brown Publishing Co.*, 486 B.R. 46 (Bankr. E.D.N.Y. 2013), several debtors sought to sell many of their assets, including both personal and real property. The assets were sold at auction in accordance with certain bidding procedures approved by the bankruptcy judge. Those bidding procedures required the winning bidder "to put down a 5% good faith deposit . . . ." *Id.* at 49. The bidding procedures further provided that "if the Successful Purchaser fails to close the Sale, the Successful Purchaser's Good Faith Deposit shall be retained by the Debtors . . . without prejudice to the Debtors' ability to seek to recover additional damages from the Successful Purchaser." *Id.* at 50. After the completion of the auction, the winning bidder ultimately failed to close on the sale. The debtors sued for breach of contract and sought actual damages.

The bankruptcy judge, applying New York law, held that the provision of the bidding procedures authorizing the retention of the good faith deposit in the event of failure to close the sale did not amount to a liquidated damages clause. First, the bankruptcy judge noted that the bidding procedures, by their own

terms, permitted the debtors to seek additional damages. The bankruptcy judge also noted that "the deposit in this case is not a partial payment or an up-front payment on a contract but rather a deposit to secure performance on the contract." *Id.* at 60. Indeed, all bidders were "required to make such a deposit in order to participate in the Auction Sale and the deposit was returnable should the qualified bidder fail to be the successful bidder . . . ." *Id.* The Court thus concluded that the debtors were entitled to seek actual damages for the winner's breach.

Here, unlike *Brown Publishing*, the Bidding Procedures are silent on whether or not Caroll would be entitled to seek actual damages. Notwithstanding this, there is little to suggest the provision in the Bidding Procedures authorizing the retention of the good faith deposit amounted to a liquidated damages provision. As in *Brown Publishing*, the good faith deposit was required of all bidders and was returnable should a bidder fail to prevail.[3] Thus, it appears the good faith deposit was more in the vein of "a deposit to secure performance on the contract." *Id.* at 60.

Moreover, this is not a situation where "actual damages may be difficult to determine . . . ." *U.S. Fidelity & Guar. Co.*,

---

[3] Moreover, *Brown Publishing* dealt with an unsuccessful bidder.

369 F.3d at 71. Indeed, the calculation of damages would seem to require little more than the comparison between the price offered and the price at which the property was actually sold. Further, it is unclear whether the good-faith deposit provision would even be enforceable were it construed to be a liquidated damages provision. Under New York law, "[i]f . . . a clause is intended to operate as a means to compel performance, it . . . will not be enforced.' " *Rattigan v. Commodre Int'l, Ltd.*, 739 F. Supp. 167, 169 (S.D.N.Y. 1990). Thus, given that New York law " 'favor[s] the construction which makes the sum payable for breach of contract a penalty rather than liquidated damages,' " *Rattigan*, 739 F. Supp. at 169-70, the Court cannot say that the bankruptcy judge erred in awarding Carroll actual damages.

## IV. CONCLUSION

For the reasons stated herein, the Court will affirm the judgment of the Bankruptcy Division.  An appropriate order follows.

S_____
         **Curtis V. Gómez**
         **District Judge**