DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

IN RE:                             )
                                   )
JEFFREY J. PROSSER,                )    Chapter 7
                                   )    Case No. 06-30009 (JFK)
          Debtor.                  )
_____    )
                                   )
JAMES P. CARROLL, CHAPTER 7        )
TRUSTEEE,                          )
                                   )
          Plaintiff/Appellee,      )
                                   )
          v.                       )    D.C. App. Civ. No. 2011-22
                                   )
JOHN D. KLINGERMAN                 )
                                   )
          Defendant/Appellant.     )
_____    )

ATTORNEYS:

**K. Glenda Cameron, Esq.**
Law Offices of K. G. Cameron
St. Croix, VI
     *For the appellant,*

**Samuel H. Israel, Esq.**
Fox Rothschild LLP
Philadelphia, PA
     *For the appellee.*

## MEMORANDUM OPINION

**GÓMEZ, J.**

Before the Court is the appeal of John D. Klingerman ("Klingerman") from the February 9, 2011, Judgment of the Bankruptcy Division of this Court.

*Carroll v. Krieger*
Civil No. 2011-22
Memorandum Opinion
Page 2

## I. FACTUAL AND PROCEDURAL BACKGROUND

On September 4, 1996, Jeffrey J. Prosser ("Jeffrey Prosser") and Dawn Prosser acquired certain real property located in Lake Placid, New York (the "Lake Placid Property").

On July 31, 2006, Jeffrey Prosser declared bankruptcy. Thereafter, the appellee, James P. Carroll ("Carroll") was appointed trustee of the bankruptcy estate.

On June 17, 2008, the bankruptcy judge authorized Carroll to sell the Lake Placid Property. The Property was to be sold at auction in accordance with certain bidding procedures approved by the bankruptcy judge (the "Bidding Procedures"). The Bidding Procedures provided that, among other things, a potential bidder submit a $200,000 deposit in order to participate in the auction. (R. 4, Ex. 2, at 2.) This deposit would be returned should the bidder fail to prevail. (R. 4, Ex. 2, at 2.)

The Bidding Procedures further provided that the winning bidder was required to be "prepared to enter into a legally binding purchase and sale agreement within two (2) weeks of the entry of [an order approving the sale]." (R. 4, Ex. 2, at 2.) Should the successful bidder fail to enter into such an agreement, the "Trustee will not have any obligation to return the Good Faith Deposit" which would instead "become property of the Debtor's estate." (R. 4, Ex. 2, at 5.)

At the auction, Klingerman submitted the winning bid, in the amount of $3.55 million. On July 23, 2008, the bankruptcy judge approved the sale of the property to Klingerman.

Klingerman made no attempt to enter into any binding purchase and sale agreement. Accordingly, on September 17, 2008, Carroll petitioned the Bankruptcy Division to retain Klingerman's $200,000 deposit. The bankruptcy judge authorized Carroll to retain the deposit, noting that its Order "shall not prohibit or limit the Trustee's . . . rights to seek additional damages against . . . Klingerman in connection with his failure to close on the sale of the Lake Placid Property." (R. 8, at 4-5.)

Caroll then sold the Lake Placid Property to the next highest bidder, for the sum of $2.7 million.

Thereafter, on January 16, 2009, Carroll initiated the underlying adversary proceeding against Klingerman. Carroll sought to recoup the difference between the sale price and Klingerman's bid.

On February 9, 2011, the bankruptcy judge entered judgment in favor of Carroll and against Klingerman, finding that Klingerman had breached a valid contract. The bankruptcy judge awarded Carroll damages in the amount of $640,689.40. Klingerman filed a timely appeal. Klingerman argues that the bankruptcy judge erred by failing to construe the relevant portions of the

Bidding Procedures requiring forfeiture of his deposit as a
liquidated damages provision. Thus, he asserts that as a matter
of law, he cannot be held liable for any additional contract
damages.

## II. <u>STANDARD OF REVIEW</u>

This Court has jurisdiction to review the "final judgments,
orders, and decrees" of bankruptcy courts pursuant to section
158(a) of Title Twenty-Eight of the United States Code.[1]

The Court will review the bankruptcy court's findings of
fact for clear error and will exercise plenary review over
questions of law. *In re Barbel*, Civ. No. 01-221 (RLF) 2004 U.S.
Dist. LEXIS 19417, at *2 (D.V.I. Sept. 21, 2004) ("A district
court reviews the Bankruptcy Division's conclusions of law *de
novo* but may only review findings of fact that are clearly
erroneous." (citing Fed. R. Bankr. P. 8013; *In re Excalibur
Auto. Corp.*, 859 F.2d 454, 457 (7th Cir. 1988)), *aff'd* 183 Fed.
App'x 227 (3d Cir. 2006). "[A] bankruptcy court's exercise of
its equitable power is reviewed only for an abuse of

---

[1] Title 28, Section 158 of the United States Codes provides, in
pertinent part: "[t]he district courts of the United States shall have
jurisdiction to hear appeals . . . of bankruptcy judges entered in cases and
proceedings referred to the bankruptcy judges under [28 U.S.C. § 157]. An
appeal under this subsection shall be taken only to the district court for
the judicial district in which the bankruptcy judge is serving." 28 U.S.C.
§ 158(a).

discretion." *In re Mou San Rim*, Civ. No. 10-1066 (DMC), 2010

U.S. Dist. LEXIS 117458, at *3-4 (D.N.J. Nov. 3, 2010).

### III. <u>ANALYSIS</u>

Klingerman challenges the bankruptcy judge's interpretation

of the good-faith deposit provision of the Bidding Procedures.

A contract is formed where both parties manifest an

intention to be bound by an agreement's terms and those terms

are sufficiently definite to be enforced. *See Morton v. Hewitt*,

202 F. Supp. 2d 394, 395 (D.V.I. 2002)(citing to *ATACS Corp. v.*

*Trans World Commc'ns, Inc.*, 155 F.3d 659, 665 (3d Cir. 1998)).

In this case, the Bidding Procedures identified an offeror, the

subject property, the time and terms of payment, and established

dates of performance. (Bidding Procedures, Adv. Pro. No. 08-

03009.)  Klingerman was informed that all bids were binding.

(Good Faith Deposit Order, Adv. Pro. No. 08-03009.)  Klingerman

then submitted a written bid.  As such, all essential elements

of a contract were present: a written offer (the Bidding

Procedures), written acceptance, and terms definite enough to be

enforced. *See Morton*, 202 F. Supp. 2d at 395.  The Bankruptcy

Court came to the same conclusion, and Klingerman does not

challenge that determination.

"The interpretation of private contracts is ordinarily a

question of state law[.]" *Volt Info. Scis., Inc. v. Bd. of Trs.*

*of the Leland Stanford Junior Univ.*, 489 U.S. 468, 474 (1989).

In this instance, the estate selling the property (as part of
bankruptcy liquidation) is a resident of St. Thomas, U.S.V.I.
Bankruptcy proceedings were initiated and overseen by the
Bankruptcy Court of the U.S. Virgin Islands.  The property that
is the object of the contract sits in the state of New York

"When two states have a connection to a case and an issue
arises on which the states' respective laws differ, a choice of
law must be made." *In re PHP Health Care Corp.*, 128 Fed. App'x
839, 842 (3d Cir. 2005); *Metro. Life Ins. Co. v. Dysart*, No.
2007-116, 2008 WL 5101686, at *6 (D.V.I. Dec. 1, 2008).

In those circumstances, the Third Circuit has instructed
that a court should apply the choice-of-law rules of the forum
state. *Id.* at 843. In the Virgin Islands, choice-of-law rules
are supplied by the Second Restatement of Conflict of Laws.[2] With
respect to disputes involving conveyances of real property, the
Restatement provides: "In the absence of [a choice-of-law term],
the instrument is construed in accordance with the rules of
construction that would be applied by the courts of the situs."
RESTATEMENT (SECOND) OF CONFLICT OF LAWS, § 224 (1971).

---

[2] In the Virgin Islands, "[t]he rules of the common law, as expressed in
the restatements of the law . . . shall be the rules of decision in the
courts of the Virgin Islands . . . in the absence of local laws to the
contrary." V.I. CODE ANN., tit. 1, § 4. Although the Supreme Court of the
Virgin Islands has stated that no Restatement should be mechanically applied
in all cases, this Court is unaware of any local law, including case law,
which would require deviation in this case. *See Banks v. Intl. Rental and
Leasing Corp.*, 55 V.I. 967, 2011 WL 6299025, at *6 (V.I. 2011).

In the instant case, the property that was the object of
the contract is located in New York. As such, the situs of the
property points in favor of applying New York law. The Court
also notes that both parties agree that the applicable law is
that of the state of New York

In New York, " 'a contractually agreed upon sum for
liquidated damages will be sustained where (1) actual damages
may be difficult to determine and (2) the sum stipulated is not
plainly disproportionate to the possible loss.' " *U.S. Fidelity
& Guar. Co. v. Braspetro Oil Servs. Co.*, 369 F.3d 34, 71 (2d
Cir. 2004) (quoting *United Merchants & Mfrs. v. Equitable Life
Assurance Soc'y*, 674 F.2d 134, 142 (2d Cir. 1982)); *see also
Truck Rent-A-Center, Inc. v. Puritan Farms 2nd, Inc.*, 393 361
N.E.2d 1015, 1018 (N.Y. Ct. App. 1977) ("[A] liquidated damages
provision is an estimate, made by the parties at the time they
enter into their agreement, of the extent of the injury that
would be sustained as a result of the breach of the
agreement."); *City of Rye v. Pub. Serv. Mut. Ins. Co.*, 315
N.E.2d 458 (1974).

" 'Whether the sum stipulated represents a liquidation of
the anticipated damages or a penalty is a question of law, with
due consideration for the nature of the contract and the
attendant circumstances.' " *U.S. Fidelity & Guar.*, 369 F.3d at
71 (quoting *J.R. Stevenson Corp. v. Cnty. of Westchester*, 493

N.Y.S.2d 819, 823 (N.Y. App. Div. 1985)). "If the clause 'is intended by the parties to operate in lieu of performance, it will be deemed a liquidated damages clause and may be enforced by the courts . . . . If such a clause is intended to operate as a means to compel performance, it will be deemed a penalty and will not be enforced.' " *Rattigan v. Commodre Int'l, Ltd.*, 739 F. Supp. 167, 169 (S.D.N.Y. 1990) (quoting *Brecher v. Laikin*, 430 F. Supp. 103, 106 (S.D.N.Y. 1977)) (applying New York law). A provision is a penalty if "the amount fixed is plainly or grossly disproportionate to the probable loss." *Truck Rent-a-Center*, 361 N.E.2d at 1018. New York courts " 'favor the construction which makes the sum payable for breach of contract a penalty rather than liquidated damages, even where the parties have styled it liquidated damages rather than a penalty.' " *Rattigan*, 739 F. Supp. at 169–70 (quoting *City of New York v. B&M Ferry Co.*, 143 N.E.788, 790 (N.Y. Ct. App. 1924)).

"Under no circumstances, however, will liquidated damages be allowed where the contractual language and attendant circumstances show that the contract provides for the full recovery of actual damages, because liquidated and actual damages are mutually exclusive remedies under New York law." *U.S. Fidelity & Guar.*, 369 F.3d at 71 (citing *XLO Concrete Corp. v. John T. Brady & Co.*, 482 N.Y.S. 2d 476, 479 (N.Y. App. Div. 1984) ("[W]hen the parties by their contract provide for the

consequences of a breach, lay down a rule to admeasure the damages[,] and agree when they are to be paid, the remedy thus provided must be exclusively followed." (internal quotation marks and citation omitted)).

Thus, for example, in *In re Brown Publishing Co.*, 486 B.R. 46 (Bankr. E.D.N.Y. 2013), several debtors sought to sell many of their assets, including both personal and real property. The assets were sold at auction in accordance with certain bidding procedures approved by the bankruptcy judge. Those bidding procedures required the winning bidder "to put down a 5% good faith deposit . . . ." *Id.* at 49. The bidding procedures further provided that "if the Successful Purchaser fails to close the Sale, the Successful Purchaser's Good Faith Deposit shall be retained by the Debtors . . . without prejudice to the Debtors' ability to seek to recover additional damages from the Successful Purchaser." *Id.* at 50. After the completion of the auction, the winning bidder ultimately failed to close on the sale. The debtors sued for breach of contract and sought actual damages.

The bankruptcy judge, applying New York law, held that the provision of the bidding procedures authorizing the retention of the good faith deposit in the event of failure to close the sale did not amount to a liquidated damages clause. First, the bankruptcy judge noted that the bidding procedures, by their own

terms, permitted the debtors to seek additional damages. The
bankruptcy judge also noted that "the deposit in this case is
not a partial payment or an up-front payment on a contract but
rather a deposit to secure performance on the contract." *Id.* at
60. Indeed, all bidders were "required to make such a deposit in
order to participate in the Auction Sale and the deposit was
returnable should the qualified bidder fail to be the successful
bidder . . . ." *Id.* The Court thus concluded that the debtors
were entitled to seek actual damages for the winner's breach.

Here, unlike *Brown Publishing*, the Bidding Procedures are
silent on whether or not Caroll would be entitled to seek actual
damages. Notwithstanding this, there is little to suggest the
provision in the Bidding Procedures authorizing the retention of
the good faith deposit amounted to a liquidated damages
provision. As in *Brown Publishing*, the good faith deposit was
required of all bidders and was returnable should a bidder fail
to prevail.[3] Thus, it appears the good faith deposit was more in
the vein of "a deposit to secure performance on the contract."
*Id.* at 60.

Moreover, this is not a situation where "actual damages may
be difficult to determine . . . ." *U.S. Fidelity & Guar. Co.*,

---

[3] Moreover, *Brown Publishing* dealt with an unsuccessful bidder.

*Carroll v. Krigsman*
Civil No. 2011-22
Memorandum Opinion
Page 11

369 F.3d at 71. Indeed, the calculation of damages would seem to require little more than the comparison between the price offered and the price at which the property was actually sold. Further, it is unclear whether the good-faith deposit provision would even be enforceable were it construed to be a liquidated damages provision. Under New York law, "[i]f . . . a clause is intended to operate as a means to compel performance, it . . . will not be enforced.' " *Rattigan v. Commodre Int'l, Ltd.*, 739 F. Supp. 167, 169 (S.D.N.Y. 1990). Thus, given that New York law " 'favor[s] the construction which makes the sum payable for breach of contract a penalty rather than liquidated damages,' " *Rattigan*, 739 F. Supp. at 169-70, the Court cannot say that the bankruptcy judge erred in awarding Carroll actual damages.

## IV. <u>CONCLUSION</u>

For the reasons stated herein, the Court will affirm the judgment of the Bankruptcy Division.  An appropriate order follows.

                              S_____
                                   **Curtis V. Gómez**
                                   **District Judge**